UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| K.B., | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 2:12 CV 48 RWS |
| MIKE WADDLE, et al., | ) |
|     Defendants. | ) |

### MEMORANDUM AND ORDER

Plaintiff K.B.[1] is a woman who was sexually assaulted in 2003 when she was a minor. Defendants are state employees who K.B. alleges were aware of a threat made by another minor to sexually assault K.B. The other minor sexually assaulted K.B. several months after making the threat. K.B. asserts that Defendants failed to warn her parent of the threat which would have allowed the parent to take protective action to prevent the assault. K.B. asserts that Defendants violated her rights under the Fourteenth Amendment of the Constitution of the United States. She also asserts negligence claims under state law. Defendants have moved for a judgment on the pleadings or in the alternative for summary judgment. Because Defendants have immunity from K.B.'s claims I will grant Defendants' motions.

*Background*[2]

In the fall of 2002 through the spring of 2003, Plaintiff K.B., a minor at the time, was a participant in an after-school program offered by the Family Advocacy Center (the Center).

---

[1] Plaintiff uses her initials due to the sensitive nature of this lawsuit.

[2] The background information is taken in part from Defendants' Statement of Uncontroverted Facts filed in support of their motion for summary judgment [Doc. # 40, Ex. 1] as well as other parts of the record.

According to K.B.'s complaint, the Center is a joint project located in Adair County, Missouri. A male minor, S.H. was also a participant in the after-school program. In February 2003, S.H. told Beatrice Dovin, an employee of the Center, that he was going to sexually assault K.B. Within twenty-four hours of receiving S.H.'s statement regarding K.B., Dovin made a "hotline" call to the child abuse and neglect telephone line maintained by the Missouri Department of Social Services, Children's Division and reported the information regarding S.H.'s statement. Several months later, during the summer of 2003, S.H. sexually assaulted K.B. at a public swimming pool.  K.B. did not disclose the incident until March 2005.

Defendant Mike Waddle was, at the relevant time, employed by the State of Missouri as the Chief Juvenile Officer of the Second Judicial Circuit.  Defendant Jeff Hall was employed by the State of Missouri as the Second Judicial Circuit's Deputy Juvenile Officer.  Defendant Stephanie Howerton was employed by the State of Missouri as a supervisor of the Adair County Missouri Department of Social Services, Children's Division.  Defendant Sara Holzmeier was employed by the Kirksville Police Department and by the Kirksville R-III School District as a school resource officer.

K.B.  alleges that Defendants all knew of S.H.'s February 2003 threat against her and failed to notify K.B.'s parent of the threat.  K.B. alleges that had K.B.'s parent been warned, she would have been in a position to take protective action against the threat.  K.B. asserts that Defendants failure to warn of the threat led to K.B. being assaulted in the summer by S.H. at a public pool.[3]  In, Court I, K.B. asserts a claim under the Fourteenth Amendment, through 42

---

[3] None of the parties allege or point to any evidence in the record that K.B. or S.H. were under the supervision of any of the Defendants or their agencies at the time of the assault at the public pool.

U.S.C. § 1983, that Defendants, as state actors, created a dangerous situation or made K.B. more vulnerable to harm by failing to warn K.B.'s parent of the threat which resulted in a violation of her liberty interest in her personal bodily integrity.  In Counts II and III, K.B. asserts state claims of negligence and negligent infliction of emotional distress, respectively.

Defendants Waddle, Hall, and Howerton have move for a judgment on the pleadings and for summary judgment.  Defendant Holmeier has move for a judgment on the pleadings. Defendants all assert immunity defenses in support of their motions.

*Legal Standard*

"Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law.  The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party. The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010)(internal citation omitted).[4]

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and

---

[4] The parties dispute whether Defendants were aware of S.H.'s threat before S.H. assaulted K.B.  I assume without deciding that they were aware of the threat for the purpose of ruling on Defendants' motions for a judgement on the pleadings.

identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

*Plaintiff's 14th Amendment Claim - Qualified Immunity*

K.B. asserts her Fourteenth Amendment claim through 42 U.S.C. § 1983.  That statute allows an individual to bring a claim against state actors for a deprivations of the individual's constitutional and federal rights.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).  "The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.'"  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 194-195 (1989).

Defendants have asserted that they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009)(internal

-4-

quotation omitted). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotations omitted). This defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. Pearson, 555 U.S. at 236. If the answer to either question is no, then the officials are entitled to qualified immunity. Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011).

K.B.'s allegation that Defendants violated her right to liberty by failing to warn her parent about the threat made by S.H. is closely related to the constitutional claim made in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989). In that case state social workers and other officials were aware that a young boy was being physically abused by his father which resulted the boy being treated for injuries at a hospital. The boy remained in the custody of his father and social workers repeatedly saw signs of continued physical abuse of the boy on multiple home visits but took no action. The father ultimately gave the boy a beating that resulted in severe permanent brain damage. Id. at 192-193. The boy's mother filed suit against state agencies and state social workers for their failure to act. The suit alleged that the defendants deprived the boy of his liberty without due process of law in violation of the

Fourteenth Amendment by failing to intervene to protect the boy against the risk of violence by his father that defendants knew or should have known.  Id. at 193.

The Court found that the plaintiff failed to state a constitutional claim. The Court stated that:

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. .... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

Id. at 195-196.  The Court stated further that "[c]onsistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196.  The plaintiff argued that the defendants, through social worker home visits, undertook a duty to protect the boy from his father's abuse and by failing to act, despite evidence of further abuse, the defendants violated the boy's constitutional right to liberty.  Id at 197.  The Court rejected that proposition and held that where state actors fail to prevent harm to an individual by a private actor (and the injured party is not in the state's custody and control, ie. a prison inmate) the state has no constitutional duty to protect the individual from harm from the private actor.  Id. at 198-200.

In the present case, K.B. alleges that Defendants knew of the threat made by S.H. and failed to warn K.B.'s parent which lead a deprivation of K.B. liberty rights.  However, as in

-6-

DeShaney, K.B. was harmed by a private actor. K.B.'s constitutional rights did not impose a duty upon Defendants to protect K.B. from S.H. by informing K.B.'s parent of S.H.'s threat or some other action. Although K.B. was the victim of a tragic assault, she has failed to establish that she had a constitutional liberty right under the Fourteenth Amendment to have Defendants protect her from the actions of S.H. As a result, Defendants are entitled to a judgment as a matter of law.

*Plaintiff's state law claims*

In Count's II and III, K.B. asserts claims for negligence and negligent infliction of emotional distress. K.B. asserts that Defendants breached a ministerial duty to report abuse imposed by § 210.115 R.S.Mo. That statute states in part:

> When any physician, medical examiner, coroner, dentist, chiropractor, optometrist, podiatrist, resident, intern, nurse, hospital or clinic personnel that are engaged in the examination, care, treatment or research of persons, and any other health practitioner, psychologist, mental health professional, social worker, ... or other person with responsibility for the care of children **has reasonable cause to suspect** that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, that person shall immediately report or cause a report to be made to the division in accordance with the provisions of sections 210.109 to 210.183. As used in this section, the term "abuse" is not limited to abuse inflicted by a person responsible for the child's care, custody and control as specified in section 210.110, but shall also include abuse inflicted by any other person.

(emphasis added). K.B. asserts that Defendants were negligent in failing to report S.H.'s threat to her parent.

Defendants assert that they are entitled to official immunity on these claims.

Missouri state law provides official immunity to public officials acting within the scope of their authority "for injuries arising from their discretionary acts or omissions," but not for "torts committed when acting in a ministerial capacity." State ex rel. Hill v. Baldridge, 186 S.W.3d 258, 259 (Mo.2006) (per

> curiam). Discretionary acts require "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo.1984) (citation omitted). In contrast, ministerial acts are "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed."

Hutson v. Walker, 688 F.3d 477, 485 (8th Cir. 2012).

Before reaching Defendants' official immunity defense, I note that there is no private cause of action for a violation of § 210.115. Bradley v. Ray, 904 S.W.2d 302, 314 (Mo. Ct. App. 1995). Even if K.B. had a cause of action under that statute, Defendants are entitled to official immunity. K.B. asserts that Defendants had a ministerial duty under § 210.115 to report S.H.'s threat. Defendants argue that the language of § 210.115 that a "person with responsibility for the care of children ***has reasonable cause to suspect*** that a child has been or may be subjected to abuse" clearly is a discretionary decision whether to act or not depending on whether there is a reasonable cause to suspect abuse. I find that this statute does not create a ministerial duty and that it imposes a discretionary duty. Unlike a ministerial function which requires a public officer to "perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed," Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008), the determination of whether theres is "reasonable cause" to suspect child abuse exists is a discretionary decision. As a result, Defendants are entitled to official immunity.

Defendants Waddle, Hall, and Howerton also assert they are entitled to a judgment as a matter of law because K.B.'s negligence claims are barred by the public duty doctrine. "The

-8-

public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public." Id. at 611 (internal citation omitted).

The duty to report suspected abuse under § 210.115 is owed to the general public, not to a complaining party, even if the defendant's failure to report suspected abuse causes a direct injury to the complaining party. Letlow By and Through Bacon v. Evans, 857 F. Supp. 676, 678 (W.D. Mo. 1994), see also Thelma D. v. Board of Education of City of St. Louis, 669 F. Supp. 947, 950 (E.D. Mo.1987). Because the duty to report under § 210.115 is owed to the general public, K.B.'s negligence claims are barred by the public duty doctrine.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants Mike Waddle, Jeff Hall, and Stephanie Howerton's motion for a judgment on the pleading [#21] and motion for summary judgment [#39] are **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Sara Holzmeier's motion for a judgment on the pleadings [# 41] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff's motion for leave to identify an expert out of time [#30] is **DENIED** as moot.

**IT IS FURTHER ORDERED that** the supplemental scheduling teleconference call scheduled for August 23, 2013 is cancelled.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2013.